[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-16914
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 12, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00043-CV-WLS-1

RAYFIELD RANSOM,

Plaintiff-Appellant,

versus

STATE OF GEORGIA,
JAMES MATTHEW HOLMAN,
GRADY HOLMAN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(May 12, 2006)

Before DUBINA, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Appellant Rayfield Ransom, proceeding *pro se*, appeals the district court's order dismissing his civil action. Ramson filed a *pro se* complaint, pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment against the State of Georgia. The district court dismissed the complaint for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine.[1]

We have held, in *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004), that "[f]ederal courts are obligated to inquire into subject-matter jurisdiction *sua sponte* whenever it may be lacking." (quotation omitted). Questions of subject-matter jurisdiction are reviewed *de novo*. *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1331 (11th Cir. 2001). In *Goodman*, we explained that:

> [t]he *Rooker-Feldman* doctrine provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts. The doctrine extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are "inextricably intertwined" with a state court judgment. A federal claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. However, even if a claim is "inextricably intertwined" with the state court's judgment, the doctrine does not apply if the plaintiff had no reasonable opportunity to raise his federal claim in state proceedings.

---

[1] The *Rooker-Feldman* doctrine is derived from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16, 44 S. Ct. 149, 150, 68 L. Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476-82, 103 S. Ct. 1303, 1311-15, 75 L. Ed. 2d 206 (1983).

*Id.* at 1332 (citation and quotation omitted).

In order for the *Rooker-Feldman* doctrine to bar a district court's jurisdiction, the following four criteria must be met:

> (1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceeding; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment.

*Amos v. Glynn County Bd. of Tax Assessors*, 347 F.3d 1249, 1265 n.11 (11th Cir. 2003) (citations omitted). Recently, the Supreme Court held that the *Rooker-Feldman* doctrine is confined to cases that are "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, ___, 125 S. Ct. 1517, 1521-22, 161 L. Ed. 2d 454 (2005).

Here, Ransom's case fits squarely within the type of cases to which the Supreme Court determined the *Rooker-Feldman* doctrine applies. In his complaint, Ransom acknowledges that the trial court determined that the property should be sold in a private sale and that the Supreme Court of Georgia affirmed the trial court's decision. Upon losing in the aforementioned state court proceedings,

3

Ransom requested that the district court review those judgments, enjoin the trial court's order directing either private or public sale of the property, and set the case for trial. Therefore, the procedural framework in Ransom's case falls directly under the *Rooker-Feldman* doctrine in that it is a case "brought by [a] state-court loser[] complaining of injuries caused by [his] state-court judgment[] rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *See Exxon Mobil*, 544 U.S. at ___, 125 S. Ct. at 1521-22.

The instant case also satisfies the four criteria set forth in *Amos*. First, the parties to the instant action are the same parties as in state court. Second, the prior state court ruling was a final judgment on the merits because the Georgia Supreme Court affirmed the trial court's decision. Third, Ransom had a reasonable opportunity to raise his federal claims in the state court proceedings since, during the property hearing, he presumably could have raised his concerns regarding his constitutional right to a fair and impartial hearing, and there is no evidence in the record indicating the state court prevented him from doing so. Also, the Supreme Court of Georgia addressed the issue of the trial court's alleged failure to address the forged deeds by explaining that the trial court had reserved the issue for later decision once the final decree was entered.

Finally, the issues Ransom presented before the district court were inextricably intertwined with the state courts' judgments. Ransom asserted the following actions as violations of due process: (1) the trial court's failure to appoint a Special Master to examine deeds to determine proper parties to the action, an omission that Ransom used as a basis for a motion to set aside the previous order of sale, the denial of which was affirmed on appeal; and (2) the Florida Supreme Court's affirmance of the lower court's decision, "thereby abridg[ing] the legal process which could have resulted in a trial by jury." Ransom's allegations that the Holmans forged the deeds and the state court violated his constitutional rights by denying him due process are inextricably intertwined with the prior state court judgments because, in order for the district court to find Ransom's allegations true, it would inevitably need to find that the state courts wrongly decided the property and forged deed issues. This is further evidenced by the fact that Ransom requested that the district court enjoin the defendants from conducting a sale of the property and set the matter for jury trial of all questionable facts and issues.

Accordingly, for the above stated reasons, we affirm the district court's judgment of dismissal.

**AFFIRMED.**